**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MIGUEL QUINONES,          )
                           )
        **Movant,**        )
v.                       )       **Civil Action No. 2:18-00605**
                           )       **Criminal Action No. 2:16-00116**
UNITED STATES OF AMERICA,  )
                           )
        **Respondent.**     )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Supplement Memorandum. (Document Nos. 108 and 109.) By Standing Order, this matter was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 110.) By Order entered on October 28, 2019, the above matter was transferred to the undersigned Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition. (Document Nos. 119 and 120.)

**FACTUAL BACKGROUND**

**A.**    **Criminal Action No. 2:16-00116:**

By Indictment filed on June 21, 2016, Movant was charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts One and Two). (Criminal Action 2:16-00116, Document No. 16.) On July 28, 2016, Movant, by counsel, Federal Public Defender Christian M. Capece and Assistant Federal Public Defender Rachel E. Zimarowski, filed a Motion to Recuse and Memorandum in Support requesting that United States District Judge Joseph R. Goodwin recuse himself. (Id., Document Nos. 34 and 35.)

By Memorandum Opinion and Order entered on August 17, 2016, Judge Goodwin denied Movant's Motion to Recuse. (Id., Document No. 39.) On September 29, 2016, Movant, by counsel, file his Motion to Suppress Evidence, Motion to Exclude Other Bad Acts Evidence, and Motion to Exclude Nature of Prior Conviction at Trial, and Motion Reserving the Right to File Further Motions. (Id., Document No. 42 - 48.) On October 5, 2016, the United States filed a Motion to Schedule Guilty Plea Hearing and the Court granted the Motion the same day. (Id., Document Nos. 49 and 50.) On October 13, 2016, Movant pled guilty to one count of being a felon in possession of a firearm (Count One). (Id., Document Nos. 51 – 52, 54 – 55.) A Presentence Report was prepared. (Id., Document No. 90.) On December 8, 2016, Movant, by counsel, filed his Objections to the Presentence Report. (Id., Document No. 58.) On December 15, 2016, the United States filed a Motion to Permit Use of Transcripts concerning Movant's trial transcripts from State v. Quinones, Case No. 14-F-225. (Id., Document No. 59.) Movant, by counsel, filed his Objections. (Id., Document No. 61.) By Order entered on March 29, 2017, the Court granted the United States' Motion to Permit Use of Transcripts. (Id., Document No. 68.) The District Court specifically noted that the United States could rely upon the transcripts, but the Court would give "the material such weight, if any, it determines at the hearing." (Id.) Sentencing Memorandums were filed by Movant and the United States on April 3 and 4, 2017. (Id., Document Nos. 73 – 74.) On April 10, 2017, Movant, by counsel, filed his Motions for Issuance of Rule 17(c) Subpoenas for the production of the forensic examination report and mental health records of Tymeka Baldwin. (Id., Document Nos. 80 and 81.) The United States filed its Response in Opposition and Movant filed his Reply also on April 10, 2017. (Id., Document Nos. 83 and 84.) By Order entered on April 12, 2017, the District Court denied Movant's Motions for Issuance of Rule 17(c) Subpoenas after determining that the material sought by Movant "falls squarely within the psychotherapist privilege established

2

by *Jaffee v. Redmond*, 518 U.S. 1 (1996)." (Id., Document No. 86.) The District Court sentenced Movant on April 13, 2017, to a term of 70-months imprisonment, to be followed by a three-year term of supervised release. (Id., Document Nos. 87 and 88.) The District Court also imposed a $100 special assessment. (Id.)

On April 25, 2017, Movant, by counsel, filed a Notice of Appeal. (Id., Document No. 92.) Mr. Capece and Ms. Zimarowski filed a Motion to Withdraw as Counsel, which the Fourth Circuit granted on April 27, 2017. United States v. Quinones, Case No. 17-4253 (4th Cir. Dec. 27, 2017), Document Nos. 4 – 5. By Order entered on May 3, 2017, the Fourth Circuit appointed Diana Stavroulakis as counsel for Movant. Id., Document No. 6-1. On June 16, 2017, the United States filed Motion to Dismiss based upon Movant's appeal waiver. Id., Document No. 15. On July 6, 2017, Movant, by counsel, filed his Response to the United States' Motion to Dismiss. Id., Document No. 20. On September 1, 2017, Movant, by counsel, filed his "Opening Brief." Id., Document No. 25. In his "Opening Brief," Movant argued as follows: (1) "The District Court committed plain error when it denied Quinones the right of allocution prior to imposing sentencing, in violation of the Federal Rules of Criminal Procedure, Rule 32(i)(4)(A)(ii);" and (2) Prior counsel was ineffective in failing to object when the District Court proceeded to sentence Quinones without allowing him the right of allocution, in violation of the Federal Rules of Criminal Procedure, Rule 32(i)(4)(A)(ii)." Id. By an unpublished Per Curiam Opinion entered on December 27, 2017, the Fourth Circuit granted the United States Motion to Dismiss as to the Rule 32 sentencing issue, determined "counsel's ineffectiveness does not conclusively appear on the face of the record,[1] and

---

[1] The Fourth Circuit noted that a claim of ineffective assistance of counsel is only cognizable on direct appeal if it conclusively appears on the record that counsel was ineffective. The Fourth Circuit determined that Movant's claim of ineffective assistance of counsel was not cognizable on direct appeal because the record did not establish ineffective assistance of counsel and the issue "should be raised, if at all, in a 28 U.S.C. § 2255 (2012) motion." *Messer*, 655 Fed.Appx. at 959.

affirmed Movant's sentence. Id., Document No. 38. United States v. Quinones, 707 Fed.Appx. 184 (4th Cir. 2017).

**B.    Section 2255 Motion:**

On April 25, 2018, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support.[2] (Civil No. 2:18-00605, Document Nos. 108 and 109.) As grounds for *habeas* relief, Movant asserts the following: (1) Ineffective assistance of counsel (Document No. 108, pp. 5 – 12.); (2) "Vindictive and selective prosecution" (Id., p. 12.); and (3) "Attack of Appellate Waiver as unconstitutional" (Id., p. 13.).

By Order entered on July 3, 2018, United States Magistrate Judge Dwane L. Tinsley directed Mr. Capece to file an affidavit responding to Movant's specific claims of ineffective assistance of counsel and the United States to file an Answer to Movant's Section 2255 Motion. (Id., Document No. 114.) On July 25, 2018, Mr. Capece filed his Affidavit and Supporting Exhibits. (Id., Document No. 115.) As Exhibits, Mr. Capece filed the following: (1) A copy of a letter from Mr. Capece to AUSA Herrald dated September 9, 2016, requesting additional discovery (Id., Document No. 115-1.); (2) A copy of a letter from Mr. Capece to AUSA Herrald dated March 20, 2017, requesting additional discovery (Id., Document No. 115-2.); (3) A copy of a letter from Mr. Capece to Senior United States Probation Officer Lambert dated December 8, 2016, setting forth Movant's legal objections and corrections" to the Presentence Report (Id., Document No. 115-3.); (4) A copy of an e-mail to Mr. Capece regarding pictures that were taken in the Dunbar

---

[2] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

storage unit (Id., Document No. 115-4.); and (5) A copy of Mr. Capece's "Sentencing Argument Outline" (Document No. 115-5.).

On September 17, 2018, the Respondent filed its Response to Movant's Section 2255 Motion. (Id., Document No. 116.) Respondent argues as follows: (1) Movant fails to carry his burden with respect to his ineffective assistance of counsel claim (Id., pp. 10 – 20.); (2) Movant's "appellate waiver is valid and enforceable" (Id., pp. 20 – 24.); and (3) Movant's claim of selective and vindictive prosecution falls with the appellate waiver (Id., pp. 24 – 25.). As Exhibits, Respondent files the following: (1) A copy of Movant's Plea Agreement (Document No. 116-1, pp. 2 – 10.); (2) A copy of the Sentencing Hearing transcripts (Document No. 12 – 51.); (3) A copy of Movant's Indictment (Id., pp. 53 – 55.); (4) A copy of Movant's Plea Hearing transcripts (Id., pp. 57 – 88.); (5) A copy of Movant's Judgment Order (Id., pp. 90 – 95.); and (5) A copy of United States v. Quinones, Case No. 17-4253 (4th Cir. 2017) (Id., pp. 97 – 100.).

On October 5, 2018, Movant filed his Reply. (Id., Document No. 117.) As Exhibits, Movant filed the following: (1) A copy of an email correspondence between Mr. Capece and AUSA Herrald (Id., pp. 18 - 19.); (2) A copy of the "Homicide Investigation Report of Detective Pile (Id., pp. 20 – 25.); and (3) A copy of "Statement Excerpts of Ashley Sheets and Lyndi Sanders" (Id., pp. 26 – 31.).

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

The filing of a Section 2255 motion does not supplant or obviate the need to file a direct appeal. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). The United States Supreme Court explains that "a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). A non-constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion. Stone v. Powell, 428 U.S. 465, 478 fn. 10, 96 S.Ct. 3037, 3044 fn. 10, 49 L.Ed.2d 1067 (1976). A constitutional claim that could have been, but was not, raised on direct appeal may not be raised for the first time in a Section 2255 motion unless the movant can show either (1) "cause and actual prejudice resulting from the errors of which he complains," or (2) "he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. Actual prejudice is shown by demonstrating that the error worked to movant's "actual and

6

substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent. Id. at 494. The movant must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Furthermore, a movant may not reassert a claim decided on direct review. In Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." An exception exists, however, when there has been an intervening change in the law which justifies consideration of a prior determination. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974).

## 1.    **Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant

received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so

8

serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

### A.    Counsel's Failure to Attack the Factual Basis for Count One:

In Ground One, Movant argues that "Counsel was aware of and did not argue at sentencing that on October 19, 2013, the storage unit where the firearms of conviction were located had a pad lock that was placed on it prior to October 19, 2013, by the Dunbar Mini Storage Unit Staff and the entrance code to the outer security fence was disabled due to the storage unit being 'abandoned' prior to October 19, 2013." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.)

In his Affidavit in Response, Mr. Capece first states that Movant never communicated his desire to withdraw his guilty plea at any time prior to the sentencing hearing. (Id., Document No. 115, p. 1.) Mr. Capece, therefore, states that he had no intent to attack the factual basis supporting Movant's guilty plea to Count One at the sentencing hearing. (Id., p. 2.) Mr. Capece explains that attacking the factual basis supporting Movant's guilty plea, could have led to the following adverse consequences to Movant: (1) "[L]ed the Court [to] denying Movant credit under the sentencing guidelines for acceptance of responsibility;" (2) "[I]nvited the Government to claim that Movant had breach his plea agreement," which could have resulted in the Government proceeding to try Movant on both Counts One and Two of the Indictment thereby subjecting Movant to double the statutory maximum sentence; and (3) "[C]ounsel would have contradicted Movant's sworn statements to the Court at his plea hearing that as a 'prohibited person' he 'knowingly purchased' the firearms identified in Count One and caused them to be placed in a storage unit." (Id.)

In Response, the Respondent argues defense counsel was not ineffective in "failing to raise arguments at sentencing that would have directly contradicted both the stipulation of facts attached to the plea agreement and [Movant's] own statements during the plea hearing." (Id., Document No. 116, p. 12.) Respondent notes Mr. Capece's above concerns and argues that "[i]t cannot be said that defense counsel's decision to not make an argument that would have harmed defendant was either deficient performance or prejudicial to defendant's case." (Id.)

In Reply, Movant argues that he "repeatedly relayed to Mr. Capece in the presence of co-counsel Rachel Zimarowski that this movant's desire to withdraw from the plea."[3] (Id., Document No. 117, p. 1.) Movant contends that Ms. Zimarowski informed Movant that "the stipulation of facts would be used against you if you withdraw your plea." (Id.) Movant states that he disagreed and inquired "how can it be used if it is factually not true and the evidence proves it because the storage unit was not paid for two months and a lock was on the unit by the storage facility." (Id.) Movant states that "Mr. Capece repeatedly tried to convince this movant that this was the best plea available and we could have argued those facts at trial if the agreement was not accepted by the Court at sentencing." (Id.) Movant further concludes that Mr. Capece had "a duty and obligation to notify the Court of any material fact that may have put the stipulation of facts into question." (Id., p. 2.) Movant contends that "facts surrounding the movant's actual access to the storage unit

---

[3] For the first time in his Reply, Movant appears to allege that he informed counsel that he wished to withdraw from his guilty plea. The record, however, does not support the foregoing. At the Sentencing Hearing, the District Court noted that on October 13, 2016, the Court reviewed the plea agreement, advised Movant of the waiver of certain rights, and Movant pled guilty to Count One of the Indictment. (Criminal Action No. 2:16-00116, Document No. 91, pp. 2 – 3.) The District Court then specifically inquired, and Movant responded in the affirmative, that he persisted in his plea of guilty and waivers. (Id., p. 3.) Thus, Movant's self-serving claim that counsel disregarded his desire to withdraw from his guilty plea is without factual support. If Movant wished to attempt to withdraw from his guilty plea, Movant clearly had the opportunity to notify the District Court of such a desire at the very beginning of the Sentencing Hearing, but he failed to do so.

on October 19, 2013, facts that mitigate actual or construction possession of the firearms of Count One were uncovered by counsel and his private investigative team." (Id.)

As determined by the Fourth Circuit, Movant "entered into his plea knowingly and voluntarily." Quinones, 707 Fed.Appx. at 185; also see Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976)(a movant may not reassert a claim decided on direct review). The record reveals that Movant pled guilty to being a felon in possession of a firearm as charged in Count One of the Indictment. (Id., Document Nos. 51 – 52, 54 – 55.) It is undisputed that Movant's Plea Agreement contained a "Stipulation of Facts," which was attached as Exhibit A. (Id., Document No. 55, p. 8.) The "Stipulation of Facts" stated, in pertinent part, as follows:

> On October 19, 2013, law enforcement executed a search warrant at a unit at a storage facility at or near Dunbar, West Virginia, within the Southern District of West Virginia. The unit was rented by defendant under his alias, Eric Hernandez. Inside the storage unit law enforcement discovered numerous items belonging to defendant. Law enforcement also located two firearms that belonged to defendant: a Harrington & Richardson, Model 088, 20 gauge shotgun and a Marlin, Model 120 Revelation Western Auto Supply Company .22 caliber rifle. Several boxes of ammunition were also found in defendant's storage unit.
> Prior to his possession of the above-referenced firearms, defendant had been convicted of a felony offense. Specifically, he was convicted on or about August 11, 2000, in the Circuit Court of Fayette County, West Virginia, of Second Degree Murder. Defendant has not had his right to possess firearms restored.
> Both of the firearms have been test-fired and found to be functional.

(Id.) It is also undisputed that Movant signed the "Stipulation of Facts" and acknowledged the correctness of the facts contained within the document. During the Plea Hearing, Movant affirmed that he signed the above "Stipulation of Facts" and understood that such could be entered into evidence if he breached the Plea Agreement. (Id., Document No. 99, p. 9.) Movant further affirmed that he considered himself guilty of violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (Id., p. 13.) Specifically, the District Court inquired as follows:

11

THE COURT:        Tell me what you did that makes you think you're guilty of those crimes - - of that crime.

                                  ***

THE DEFENDANT:    I knowingly purchased those firearms as a prohibited person and placed them in a storage unit.

THE COURT:        Did these events or acts occur on or about October 19th, 2013, at or near Dunbar, Kanawha County, in the Southern District of West Virginia.

THE DEFENDANT:    Yes.

(Id.)

In the instant case, Movant is attempting to attack the factual basis for his guilty plea under the guise of a claim of ineffective assistance of counsel. In his Section 2255 Motion, Movant argues that defense counsel acted ineffectively by failing to challenge Movant's access or ownership of the storage unit during his Sentencing Hearing. Movant argues that he is innocent of his conviction and Mr. Capece "took full advantage" of the fact that Movant was "not an attorney and was wholly unfamiliar with the federal criminal process." (Civil Action 2:18-0605, Document No. 117.) It is well-known to even non-lawyers, however, that innocence is a valid defense to any alleged crime. To the extent Movant argues that he was unaware of the above defense due to ineffective assistance of counsel is without merit. Additionally, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221 - 222 (4th Cir. 2005). Any argument by defense counsel challenging Movant's access or ownership of the storage unit would have contradicted Movant's sworn statements made during the Rule 11 colloquy and Movant has failed to show extraordinary circumstances to allow such.

12

Furthermore, Movant has not demonstrated that a challenge at the Sentencing Hearing to Movant's access/ownership of the storage unit would have made a difference in the outcome of his sentence. As Respondent has suggested, defense counsel's challenge to the factual basis may have resulted in the United States claiming Movant breach the Plea Agreement or caused the loss of a sentencing reduction for acceptance of responsibility. Clearly, a breach in the terms of the Plea Agreement could have resulted in Movant being prosecuted on both Counts One and Two of the Indictment, thereby subjecting him to double the maximum term of imprisonment. The undersigned, therefore, recommends that the District Judge find that Movant cannot demonstrate that defense counsel's above conduct fell below an objective standard of reasonableness or that Movant's was prejudiced by counsel's failure. Based upon the foregoing, the undersigned respectfully recommends that Movant's above ineffective assistance of counsel claim be denied.

**B.    Counsel's Failure to Challenge the Use of Firearms contained in Count Two of the Indictment as Relevant Conduct:**

In Ground Two, Movant argues that "[c]ounsel failed to investigate facts of this [Movant] not actually residing or co-habituating with Shawnique Hudson during the months of August thru December 2013, that made up the alleged circumstances surrounding Count Two of the Indictment." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.)

In his Affidavit in Response, Mr. Capece first states that he "did investigate facts that showed that Movant was not residing with Ms. Hudson during the months leading up to his arrest at Ms. Hudson's apartment on December 13, 2013." (Id., Document No. 115, p. 2.) Mr. Capece states that Ms. Hudson was interviewed twice by the Federal Public Defenders Investigators (June 16, 2016, and October 4, 2016). (Id.) Mr. Capece explains that he and co-counsel participated in the second interview. (Id.) Mr. Capece acknowledges that "Ms. Hudson's responses to questions posed to her during these interviews largely matched her grand jury testimony that Movant did not

13

live with her at 1050 Hillcrest Drive, Charleston, West Virginia." (Id., pp. 2 – 3.) Specifically, Mr. Capece states that "Ms. Hudson confirmed her grand jury testimony that she and Movant arrived at her apartment at approximately 5 o'clock in the morning on December 13, 2013, the date law enforcement arrested Movant and found and seized Ms. Hudson's firearms." (Id., p. 3.) Concerning Count Two of the Indictment, Mr. Capece asserts that he also submitted supplemental discovery request to the Government, the FPD investigator visited and took photographs of the 1050 Hillcrest Apartment on September 7, 2016, and counsel intended to use the foregoing in support of a motion to suppress the firearms in Count Two. (Id.) Mr. Capece further states that he filed objections to the draft Presentence Report where the probation officer recommended that Movant jointly possessed the firearms identified in Count Two and such should be considered as relevant conduct. (Id.) Mr. Capece explains that after the probation officer declined to change the above recommendation, Mr. Capece filed a "twelve-page sentencing memorandum setting forth factual and legal arguments urging the Court to sustain Movant's objection and find that the evidence did not support a finding that Movant possessed – directly, constructively or jointly – the firearms found in Ms. Hudson's apartment." (Id., p. 4.) Mr. Capece notes that he attached eight exhibits in support of his sentencing memorandum. (Id.) Mr. Capece further states that he filed a Reply to the Government's sentencing memorandum reiterating his prior arguments and "arguing further that the Government had failed to provide evidence that those firearms were 'part of the same course of conduct or common scheme or plan' as the offense of conviction within the meaning of U.S.S.G. § 1B1.3." (Id.) Mr. Capece notes that he attached three exhibits in support of his Reply. (Id.) Therefore, Mr. Capece states as follows: (1) "[C]ounsel investigated whether the Government had sufficient evidence to prove by a preponderance of the evidence standard that Movant possessed either firearm identified in Count Two of the Indictment;" (2) "[C]ounsel selected and relied upon

those evidentiary and legal arguments summarized above that he believed would work best to convince the Court to sustain Movant's objection;" and (3) "[A]t Movant's sentencing hearing, undersigned's co-counsel orally argued that Ms. Hudson's firearms should not be considered relevant conduct and co-counsel was prepared to cross-examine the Government's witnesses at Movant's sentencing hearing." (Id., pp. 4 – 5.)

In Response, the Respondent argues Movant's claim that defense counsel failed to investigate whether Movant was residing at Ms. Hudson's apartment at 1050 Hillcrest Drive is "simply contrary to the facts of the case." (Id., Document No. 116, pp. 12 - 13.) As set forth in Mr. Capece's Affidavit, Respondent argues that the record reveals that defense counsel made "numerous objections to the PSR regarding the allegation that defendant resided with Ms. Hudson, and specifically objected to the conclusion that defendant jointly possessed the firearms located at her apartment at the time of defendant's arrest." (Id., p. 13.) Respondent claims that defense counsel investigated the issue and made extensive written arguments that the Hillcrest Drive firearms should not be attributed to Movant. (Id.) Respondent further notes that defense counsel filed a motion to suppress the evidence seized from the Hillcrest residence. (Id.) Finally, Respondent notes that Ms. Zimarowski made oral arguments at the Sentencing Hearing advocating for the exclusion of the Hillcrest firearms from Movant's relevant conduct. (Id.) Respondent, therefore, contends that "[i]t is clear from the record that defense counsel took great pain to investigate issues related to defendant allegedly residing at the Hillcrest Drive apartment and to exclude the firearms from that residence from defendant's relevant conduct." (Id.) Respondent asserts that even though these efforts were ultimately unsuccessful, such does not render counsel's representation ineffective. (Id., pp. 13 – 14.)

In Reply, Movant argues that "[c]ounsel did not present any information to this Court

pertaining to this Movant's actual residence; this Movant's actual whereabout in the months of November and December (days prior to arrest); GPS location data; license plate reader (LPR) data; affidavits of witnesses." (Id., Document No. 117, p. 3.) Movant complains that counsel "minimized his investigative resources to investigation Shawnique Hudson and visiting the apartment where the arrest occurred." (Id.) Movant states that the "false theory of 'co-habitation' was the primary basis for the Court's determination regarding constructive possession" of the firearms. (Id.) Movant concludes that the above "went virtually uncontested by Mr. Capece." (Id.) Movant contends that counsel would have acted effectively if counsel would have given "the Court a clear picture detailing" the following facts: (1) "Your Movant resided in his own home;" (2) Movant "was not allowed to 'reside' with Shawnique Hudson per lease stipulation;" (3) "Your Movant was in New York City during November-early December caring for his oldest son;" (4) "Your Movant left New York City on December 2, 2013, and arrived at Ms. Hudson's apartment the morning of December 3, 2013;" and (5) Movant "was arrested being awakened by police knocking at the door after traveling over 9 hours." (Id.)

A review of the record clearly reveals that Mr. Capece conducted an investigation concerning whether Movant was residing at Ms. Hudson's apartment at 1050 Hillcrest Drive. Movant, however, complains that Mr. Capece failed to provide evidence of his "actual residence," "GPS location data," license plate reader," and "affidavits of witnesses." First, the record reveals that Mr. Capece presented evidence disputing that the Hillcrest apartment was Movant's residence. Specifically, Mr. Capece arranged for Ms. Hudson to be interviewed on two occasions, Mr. Capece visited the Hillcrest apartment during one of the interviews, and the FPD's investigator took photographs of the Hillcrest apartment. Of significance, the above revealed that Ms. Hudson's interview statements and grand jury testimony were consistent that Movant did not reside at the

Hillcrest apartment. Mr. Capece had testimony from Ms. Hudson that even though they were in a relationship, they each maintained separate residences. (Document No. 85.) Although Ms. Hudson stated that she and Movant saw each other frequently through late September 2013, she said their contact became less frequent in the weeks to follow. Mr. Capece further noted that officers began surveillance of the Hillcrest residence in early October, and unsuccessfully attempted to locate Movant at this residence on multiple occasions. Mr. Capece stressed that officers did not locate Movant at the Hillcrest residence until December 3, 2013 (the date of Movant's arrest). It was further undisputed that Movant brought an overnight bag with him to the Hillcrest apartment. Although Movant puts much weight on the alleged proof of his "actual residence," any evidence indicating that Movant resided at another residence could not have conclusively proved that Movant was not cohabitating at the Hillcrest residence. Thus, Mr. Capece's focus on the Hillcrest apartment and proving that Movant was not residing at the Hillcrest residence was a reasonable strategy.

Second, Movant complains that Mr. Capece failed to obtain "GPS location data" and "license plate reader data." Movant, however, fails to provide any indication that such evidence even exists, and if so, what that evidence would have revealed. A license plate reader would merely indicate that a certain vehicle was at a certain location at a specific time, but such would not conclusively prove the location of an individual. Third, Movant complains that Mr. Capece did not obtain "affidavits of witnesses." Again, Movant does not specify the names of the "witnesses" Mr. Capece should have obtained affidavits from, nor what their affidavits would have stated. Thus, Movant's claim that he was prejudiced by Mr. Capece's failure to obtain evidence of Movant's "actual residence," "GPS location data," license plate reader," and "affidavits of witnesses" is speculative at best. As set forth in Mr. Capece's Affidavit, and support by the record, Mr. Capece

conducted a thorough investigation concerning whether Movant was co-habiting at the Hillcrest apartment.

Finally, Movant argues that Mr. Capece was ineffective in failing to give "the Court a clear picture detailing" the following facts: (1) "Your Movant resided in his own home;" (2) Movant "was not allowed to 'reside' with Shawnique Hudson per lease stipulation;" (3) "Your Movant was in New York City during November-early December caring for his oldest son;" (4) "Your Movant left New York City on December 2, 2013, and arrived at Ms. Hudson's apartment the morning of December 3, 2013;" and (5) Movant "was arrested being awakened by police knocking at the door after traveling over 9 hours." Again, Movant's above argument is refuted by the record. Mr. Capece asserts such in his objections to the presentence report and two sentencing memorandums. (Criminal Action No. 2:16-00116, Document Nos. 58, 73, 85.) Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S.Ct. at 2065. It is well recognized that classic tactical decisions may be made *without* a defendant's consent. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(emphasis added). Specifically, "[d]ecisions that may be made without the defendant's consent 'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id.(citing United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Thus, Movant cannot establish either prong of Strickland as to the above claim. The undersigned, therefore, respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**C.    Counsel failure to argue prejudice caused by time lapse in prosecution:**

In Ground Three, Movant argues that "counsel refused to argue motions relating to actual

prejudice as it pertained to his inability to investigate physical evidence that included license plate reader data base information as well as phone records and witness accounts due to the time that he elapsed from the Government's acknowledgment of a federal offense and the actual filing of the Complaint." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.) Movant alleges that the "elapsing of the time causing the prejudice was a result of prosecutor gamesmanship and inertia." (Id.) Movant complains that "counsel refused to file Motions for Actual Prejudice, Vindictive, and Selective Prosecution knowing the Government used this case to punish me for an acquitted State case." (Id.)

In his Affidavit in Response, Mr. Capece acknowledges that he "did not file a motion to dismiss Count One of the Indictment on the grounds that Movant's due process rights under the Fifth Amendment to the Constitution had been violated as a result of the Government's decision to delay filing an Indictment against Movant until after the State tried Movant for first degree murder." (Civil Action No. 2:18-00605, Document No. 115, p. 5.) Mr. Capece notes that the allegations in Count One (felon in possession of a firearm) were based upon firearms found in a storage unit at the Dunbar Mini-Storage facility during a search by law enforcement officials on October 13, 2013, in connection with an ongoing state investigation. (Id.) Mr. Capece states that during discovery, counsel learned that the "Government had not preserved all of the items discovered in the storage unit." (Id., p. 6.) Mr. Capece asserts that an FPD investigator confirmed that although some items from the storage unit were retrieved by law enforcement, the remaining items were disposed of by management of the storage unit. (Id.) Mr. Capece explains that even though many items seized in the storage unit were no longer available, the Government's photographic evidence showed mail addressed to at least three other persons was located in the storage unit on the day the firearms were seized. (Id.) Thus, Mr. Capece states that "[h]ad Movant

19

proceeded to trial, undersigned counsel would have presented a defense that others beside Movant had access to the storage unit." (Id.) Next, Mr. Capece states that "[d]uring August 2016, undersigned counsel researched whether Movant's due process rights under the Fifth Amendment to the Constitution had been violated because the times in the storage facility had not been preserved since the Government waited approximately two and one-half years to prosecute him for violations of 18 U.S.C. § 922(g)(1)." (Id.) Mr. Capece states that he "concluded that Movant would not have been able to file a non-frivolous motion that there had been a due process violation in his case." (Id.) Finally, Mr. Capece states that he similarly "considered but ultimately concluded that there did not exist non-frivolous grounds for motions based on vindictive and selective prosecution." (Id.)

In Response, the Respondent argues defense counsel was not ineffective in failing to "file and argue a motion related to [Movant's] allegation that his constitutional rights were violated due to the lapses in time between the offense, which took place in October 2013, and the federal indictment, during which time the state was pursuing a first degree murder charged against [Movant]." (Id., Document No. 116, pp. 14 - 15.) As set forth in Mr. Capece's Affidavit, Respondent notes that counsel researched the issues of delayed prosecution, vindictive prosecution, and selective prosecution and determined each argument would be frivolous. (Id.) Respondent argues that a defense counsel's decision to not file a frivolous motion cannot be deemed ineffective. (Id.) Respondent, therefore, concludes that Movant "cannot carry his burden to show that it was ineffective for defense counsel to decline to file motions that were determined, after due consideration, to be frivolous." (Id.)

In Reply, Movant first argues that "counsel neglects to address the specific assertions set out in Ground 3 as the ground is specific to Count Two of the Indictment." (Id., Document No.

117, p. 4.) Movant states that "Count Two of the indictment contains the sole firearm mentioned in the arresting criminal complaint of June 14, 2013." (Id.) Movant complains that "the government was able to rely on the investigative reporting of the Kanawha County Sheriff's Office and their witnesses' recollections during deputy interrogations and questioning in 2013, when minds were closer to the dates in question." (Id.) Concerning Movant's claim of ineffective assistant of counsel based upon Mr. Capece's failure to file a motion based upon alleged vindictive prosecution, Movant argues that a vindictive prosecution claim was not "frivolous." (Id.) Movant states that Mr. Capece's statement that the argument would have been frivolous is (1) "led by cronyism and this sentimentalities toward any government action due to his prior military service and active military affairs participation;" or (2) "is false, and is merely a method of frivolously contesting the ground due to it being raised." (Id.) Concerning Movant's claim of ineffective assistant of counsel based upon Mr. Capece's failure to file a motion based upon alleged selective prosecution, Movant concludes that "in the Southern District of West Virginia the United States is highly selective in concert with the State agencies as to which individuals they will prosecute under 18 U.S.C. § 922(g)." (Id., p. 6.)

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S.Ct. at 2065. Furthermore, it is well recognized that classic tactical decisions may be made *without* a defendant's consent. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(emphasis added). Specifically, "[d]ecisions that may be made without the defendant's consent 'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id.(citing United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Aside from Movant's conclusory assertion, there

is no indication that defense counsel could have filed non-frivolous motions requesting dismissal based upon delayed prosecution, vindictive prosecution, or selective prosecution. Concerning Movant's claim of delay prosecution, Movant clarifies in his Reply that he is alleging ineffective assistance of counsel based upon Mr. Capece's failure to file a motion to dismiss regarding Count Two of the Indictment. The record clearly reveals that Count Two of the Indictment was dismissed pursuant to the terms of Movant's Plea Agreement. Thus, Movant cannot establish that he suffered any prejudice as a result of Mr. Capece's failure to file a motion to dismiss regarding Count Two of the Indictment. Furthermore, Mr. Capece's declares that he researched the above issue as to Count One and determined that no non-frivolous motion could be filed asserting a due process violation based upon a delay prosecution. The mere fact that witnesses' memories may have been better during "deputy interrogations and questioning in 2013" does not establish that Movant suffered any significant prejudice. United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)("[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.") Furthermore, there is absolutely no evidence to support Movant's conclusory allegation that the Government delayed prosecution to gain a tactical advantage.

Concerning Movant's claim of ineffective assistance of counsel based upon selective prosecution, the undersigned finds such a claim to be without merit. As set forth above, Mr. Capece declares he researched the issue and determined that any such argument would be frivolous. "A criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights. A defendant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997)(quotations and citations

omitted); also see United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012)("The burden on a party seeking to dismiss an indictment on the basis of selective prosecution is high.") The Fourth Circuit has observed that the presumption of regularity is not lightly disregarded. United States v. Passaro, 577 F.3d 207, 219 (4th Cir. 2009). Specifically, the Fourth Circuit explained as follows:

> Indeed, criminal defendants commonly complain that other persons are more worthy of criminal prosecution. But our constitutional system leaves it to the discretion of the Executive Branch to decide who will face prosecution. Unless a defendant provides "clear evidence" to overcome the presumption that a government prosecutor has acted lawfully and without discrimination – a "particularly demanding" standard – he cannot demonstrate a constitutional violation for selective prosecution.

Id. at 219. In United States v. Khan, 461 F.3d 477 (4th Cir. 2006), the Fourth Circuit observed that "[i]n deference to executive discretion, we have held that 'defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.'" Khan, 461 F.3d at 498. In the instant case, Movant appears to argue that he was subjected to selective prosecution because the prosecutor brough Federal criminal charges against him. (Document No. 117, pp. 6 – 7.) Movant argues that he should have been prosecuted in State court for violating State law instead of Federal law because State law provided a less severe penalty. (Id.) Movant has failed to provide any evidence to overcome the presumption that the prosecutor acted lawfully and without discrimination. Furthermore, the decision to bring Federal or State charges are made by separate individuals. The ultimately authority to bring State charges rests upon the State Attorney General through its prosecutors, while the authority to bring Federal charges rests upon the United States Attorney General through its prosecutors. The record is void of any indication that Movant was subjected to selective prosecution. Accordingly, the undersigned finds that Movant cannot show that counsel acted ineffectively in failing to pursue the above meritless arguments. See United

States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument").

Concerning Movant's claim of ineffective assistance of counsel based upon vindictive prosecution, the undersigned finds such a claim to be without merit. As set forth above, Mr. Capece declares he researched the issue and determined that any such argument would be frivolous. "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." United States v. Ford, 835 F.Supp.2d 137, 143 (S.D.W.Va. Dec. 12, 2011)(J. Copenhaver). The government, however, "ordinarily has wide latitude in deciding whether to prosecute." United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012). "As a result, the presumption of regularity supports their prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Armstrong, 517 U.S.456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)(quotation and citation omitted). Movant argues that he was "vindictively" prosecuted for being a felon in possession of a firearm because Movant was acquitted on his State charge of first-degree murder. (Document Nos. 108 and 109.) Movant's allegation that the prosecutor only decided to prosecute Movant after Movant was acquitted on his State charges does not establish a genuine animus toward Movant to support a vindictive prosecution claim. Had the prosecutor had a genuine animus towards Movant, it seems more likely that Movant would have been federally

24

prosecuted no matter to results of the State criminal proceedings. The record is void of any indication that Movant was subjected to vindictive prosecution. Accordingly, the undersigned finds that Movant cannot show that counsel acted ineffectively in failing to pursue the above meritless arguments. See Kilmer, 167 F.3d at 893; Moore, 934 F.Supp. at 731.

Based upon the foregoing, the undersigned respectfully recommends that that District Court dismiss Movant's above claim of ineffective assistance of counsel.

### D.    Counsels' failure to challenge Hillcrest firearms as relevant conduct:

In Ground Four, Movant argues that "[c]ounsel abandoned his defense of the [Movant]'s case after counsel realized Judge Goodwin had already decided his sentence and had made his determinations prior to the actual sentencing hearing." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.) Movant complains that "[c]ounsel did not argue that Count Two of the Indictment contained no evidence directly linking the weapons seized from Shawnique Hudson's apartment to the weapons located in the Dunbar Mini Storage Unit." (Id.) Movant asserts that "[c]ounsel did not argue at sentencing that for two, non-contemporaneous illegal firearms possession to be considered part of the same course of conduct, they must, among other factors, be connected by strong evidence of similarity." (Id.)

In his Affidavit in Response, Mr. Capece states that he "did not abandon Movant's objection to the Court considering the firearms in Count Two as relevant conduct at the sentencing hearing." (Id., Document No. 115, p. 7.) Specifically, Mr. Capece explains that "[i]n addition to arguments contained in Movant's sentencing memorandum and his reply to the Government's sentencing memorandum, which specifically addressed the failure of the Government to provide evidence linking the firearms found in Ms. Hudson's apartment with the firearms underlying the offense of conviction under U.S.S.G. § 1B1.3, co-counsel presented additional argument at the

sentencing hearing that the Government failed to prove by a preponderance of the evidence Movant possessed the two firearms belong to Ms. Hudson." (Id.) Mr. Capece further explains that "[c]o-counsel argued that at best the Government could show that there was a possibility Movant knew the firearms existed but that knowledge was insufficient to meet the standard for constructive possession." (Id.) Finally, Mr. Capece states that "[c]o-counsel was also prepared to confront and cross-examine any Government witness who would have testified at the sentencing hearing, but the Government chose not to call any witnesses and instead informed the Court that it would rely on witness statements contained in the PSR." (Id.)

In Response, the Respondent argues defense counsel was not ineffective in failing to "make various arguments at [Movant's] sentencing hearing related to the inclusion of the Hillcrest Drive firearms as relevant conduct." (Id., Document No. 116, p. 15.) Respondent notes that Movant incorrectly represents defense counsels' conduct. (Id.) As set forth in Mr. Capece's Affidavit, Respondent notes that "in additional to addressing these issues in [Movant's] objections to the PSR and in two separate sentencing memorandum, Ms. Zimarowski made additional oral arguments during the sentencing hearing attacking the attribution of the firearms to [Movant]." (Id.) Respondent argues that "[d]efense counsel made every reasonable argument regarding the Hillcrest Drive firearms, and the mere fact that [Movant] was disappointed by the district court's ultimate decision does not render defense counsel's efforts ineffective." (Id.) Accordingly, Respondent contends that Movant's cannot meet his burden regarding his above claim of ineffective assistance of counsel. (Id.)

In Reply, Movant again argues that defense counsel abandoned his defense at sentencing. (Id., Document No. 117, p. 8.) Movant contends that during the Sentencing Hearing, the Court inquired whether Mr. Capece had anything he would like "to proffer with respect to the Court's

guideline calculation" and Mr. Capece responded "no." (Id.) Movant, therefore, argues that Mr. Capece conceded to the determination of relevant conduct. (Id.) Movant further complains that "counsel did not call a single witness nor present any evidence in this regard." (Id.) Movant states that "counsel abandoned his defense completely and allowed the Court to merely rely upon the imported information contained in the PSR." (Id.)

As more fully described in Section 1(B) above, the record does not support Movant's claim that defense counsel failed to challenge the use of the firearms located in the Hillcrest apartment (as charged in Count Two) as relevant conduct at sentencing. The record clearly reveals that defense counsel challenge the use of the Hillcrest firearms as relevant conduct in the filing of objections to the Presentence Report, Movant's Sentencing Memorandum, and Movant's Reply to the Government's sentencing memorandum. (Criminal Action No. 2:16-00116, Document Nos. 58, 73, 74, 84.) Additionally, Ms. Zimarowski made oral arguments during the Sentencing Hearing attacking the attribution of the Hillcrest firearms to Movant. (Id., Document No. 91, pp. 11 - 13.) Although the District Court was unpersuaded by defense counsel's arguments, such does not establish ineffective assistance of counsel. Thus, the record does not support Movant's claim that defense counsel abandoned Movant's objection to the Court's consideration of the firearms in Count Two as relevant conduct at the Sentencing Hearing. To the contrary, the record reveals that defense counsel zealously objected to the consideration of the firearms located in the Hillcrest apartment as relevant conduct. Thus, Movant's above claim is without merit.

Next, Movant complains that defense counsel should have presented witnesses at the Sentencing Hearing. "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir.

2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel). It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Furthermore, Movant fails to allege any facts supporting his claim that counsel was unreasonable in his failure call "witnesses" or how he was prejudice by such. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner must proffer evidence of what the witnesses' testimony would have been and cannot establish ineffective assistance of counsel based on a general claim that additional witnesses should have been called); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)(a defendant who faults counsel for not calling a witness cannot simply state the testimony would

have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim); <u>Slate v. Vargo</u>, 2014 WL 3378627, * 7 (E.D.Va. July 8, 2014)("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on the failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); <u>Johnson v. McCall</u>, 2010 WL 936726, * 4 (D.S.C. March 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") Movant neither identifies the possible witness by name nor provides an affidavit verifying the witness's possible testimony. Thus, Movant cannot establish that defense counsel was deficient or that he was prejudiced by the alleged deficiency. Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

> E.    **Counsels' failure to challenge Government's presentation of perjured testimony:**

In Ground Five, Movant argues that "[c]ounsel failed to address the court pertaining to the Government's presentation of perjured testimony in the transcripts of <u>State v. Quinones</u>, 14-F-225." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.) Movant claims that "[c]ounsel knew that the Government was fully aware of the perjured testimony being presented to the Court due to its intrinsic knowledge of the investigatory information." (<u>Id.</u>) Movant contends that the "Government was fully aware that Ashley Sheets, Matthew Legg, and Kelsey Legg committed perjury yet still presented the testimony of these individuals as fact to enhance this [Movant's] sentence." (<u>Id.</u>) Movant alleges that the "Government did the same with its description of details in its Sentencing Memorandum regarding statements of Dgyerson Patterson, Janina Adkins, Kelsey Legg, Matthew Legg, and Earl Hill." (<u>Id.</u>) Therefore, Movant argues that the "use of perjured testimony, knowingly nullifies the plea agreement." (<u>Id.</u>)

In his Affidavit in Response, Mr. Capece states that he "objected to the Court's use of trial

29

transcripts from Movant's trial in <u>State of West Virginia v. Quinones</u>, 14-F-225, in which he was found not guilty, and argued that the Court should not consider Movant's acquitted conduct in determining his sentence." (<u>Id.</u>, Document No. 115, p. 8.) Specifically, Mr. Capece explains that he asserted two arguments in support of his objection to the proposed use of the trial transcripts: (1) "Evidence of acquitted conduct that is neither relevant nor related conducted to the offense of conviction to support an upward variance amounts to 'the tail that wags the dog of the substantive offense;'" and (2) "[P]ermitting the use of transcripts in [Movant's] case will not promote judicial efficiency." (<u>Id.</u>) Mr. Capece states that he additionally "attacked the trial testimony of Ms. Legg, Mr. Legg, Ms. Sheets, and Mr. Patterson, as well as the Government's description of the trial testimony of Mr. Hill, in its reply to the Government's sentencing memorandum." (<u>Id.</u>) Finally, Mr. Capece explains that as an Exhibit is Reply, Mr. Capece attached "Movant's motion to dismiss his state case, which set forth the issues related to the pretrial statements of Ms. Legg, Mr. Legg, Ms. Sheets, Mr. Patterson, Ms. Atkins, and Mr. Hill in exhausting detail." (<u>Id.</u>, Exhibit D.)

In Response, the Respondent argues defense counsel was not ineffective in failing to "object to the introduction by the United State of the transcripts from [Movant's] state murder trial, which [Movant] alleges contains perjured testimony." (<u>Id.</u>, Document No. 116, pp. 15 - 16.) Respondent contends that Movant once again misrepresents the conduct of defense counsel. (<u>Id.</u>, p. 16.) As set forth in Mr. Capece's Affidavit, Respondent argues that "defense counsel extensively objected to the admission of the transcripts." (<u>Id.</u>) Respondent further explains that "Mr. Capece submitted arguments and exhibits to the district court attacking the trial testimony of specific witnesses." (<u>Id.</u>) Respondent argues that defense counsel was not deficient because the record reveals that defense counsel "made extensive efforts to exclude the state court transcripts and to discredit various testimony from the state trial." (<u>Id.</u>) Respondent finally argues that Movant

cannot demonstrate any prejudice because "the district court made clear that, while it permitted the United States to submit the transcripts, the transcripts did not play a role in the decision to vary upward when sentencing [Movant]." (Id.)

In Reply, Movant argues that he is not "alleging" that Ms. Ashley Sheets committed perjury during State proceedings, but he is "proving that the Government knowingly submitted the perjured testimony of Ashley Sheets and other witnesses in the State of West Virginia v. Quinones, 14-F-225 and counsel failed to advise the Court accordingly." (Id., Document No. 117, p. 9.) Movant contends that the "Government's motive in submitting the perjury was to enhance Movant's sentence, to which end they were successful." (Id.) Movant claims that "Mr. Capece never mentioned Ashley Sheets or Lyndi Sanders in any of his filings as he has claimed in his sworn affidavit." (Id., p. 11.) Finally, Movant claims that the District Court did consider the perjured testimony at Movant's Sentencing Hearing. (Id.) Movant claims that if the District Court would have been made aware of the perjured State Court testimony, "the Court may have been disgusted by the Government and the State in its attempt to manipulate a federal judge into punishment a defendant for acts he actually did not commit." (Id., p. 13.)

A review of the record clearly reveals that Mr. Capece extensively objected the proposed use of the State court trial transcripts. (Document Nos. 61, 84.) Mr. Capece also attached a copy of Movant's "Supplemental Arguments of Law in Support of Defendant's Motion to Dismiss" as an Exhibit to his Movant's "Reply to the Government's Sentencing Memorandum." (Id., Document No. 84-5.) Additionally, there is no indication that Movant was prejudiced by the Government's presentation of the State trial transcripts. During the Sentencing Hearing, the District Court stated, in pertinent part, as follows:

> [Title 18 U.S.C. §] 3553(a) also directs me to consider the deterrent effect of the sentence that need to protect the public from further crimes of this defendant.

31

I must impose a sentence that will deter violent felons from possessing firearms. The public must be protected from this defendant. The defendant disregarded the conditions of his release, absconded from parole, obtained firearms that he was prohibited from owning. And it's clear to me, and I conclude, that he cares little for the law.

It's also clear to me that he warrants a severe sentence to deter his future criminal conduct and to protect the public. He's an individual who has a second-degree murder charge who, as the evidence showed, persistently disregarded all the rules. We come here today, however, to sentence the defendant for his conviction of the crime charged in Count One of an indictment returned against him, not a first-degree murder charge for which he was acquitted in State Court. I understand, indeed I am now extremely familiar from the voluminous record presented to me by the Government, that there was substantial evidence against the defendant in the state murder case. And, yes, I understand that I may and, in fact, do consider that evidence in arriving at a just sentence. But above all, I understand that fundamental fairness is the lodestar of our criminal just system and that the most important component of that justice system is trial by jury which is designed to ensure fundamental fairness.

Relevant acquitted conduct is clearly to be considered under the guidelines. However, the murder charges that Government relies upon heavily here are not and could not be relevant conduct under the guidelines. Indeed, the guns were neither used - - no guns were used in the state murder charge. Because the state prosecutors were unable to - - no, no. Because the prosecutors here are unable to attribute the murder to the defendant as relevant conduct, they are that I should use the acquitted murder conduct to maximize defendant's sentence using the 3553(a) factors. That is, they would have me - - when I look at the guidelines and the statutory limits, they would effectively have me double the guideline sentence principally based, as I read their argument, on the acquitted murder conduct. It's clear to me that 18, United States Code, Section 3661 permits me to consider acquitted conduct even where, as here, it's not attributable as relevant conduct.

Nevertheless, I refuse to give evidence from a murder trial in State Court where the defendant was acquitted a tail-wagging-the-dog weight, which is what the prosecution requests of me. I will not allow defendant's prior acquitted conduct to swallow the charge to which he pled guilty in this case. A jury determined that the defendant was not guilty of murder. If I maximize the defendant's sentence based principally on that acquitted conduct, it would, in my view, undermine the public's confidence in our system of justice.

***

Overreliance on acquitted conduct is fundamentally unfair in my judgment because it provides prosecutors a second bite at the apple. State prosecutor already attempted to convict this defendant of first-degree murder and they failed. Finally, overreliance on acquitted conduct threatens the uniformity of sentencing that 3553(a) demands. I acknowledge that sentences must be tailored to each defendant's conduct and character. But a sentencing hearing is not a forum to re-litigate failed prosecutors. Were it to become such, wildly disparate sentences would follow.

Mr. Outlaw and others would have me completely ignore the evidence surround the murder charge, but settled case law does not permit me to ignore that evidence and I have considered it.

***

I have considered it. I have not categorically excluded it. I have included it. But I am not required to give the acquitted conduct extraordinary weight where there is no relationship between the offense of conviction and the acquitted conduct. After reviewing the record, it's abundantly clear to me that no such relationship exists here. I've considered the material presented by the Government, but I will not give it preponderant weight that the Government asks me to give it.

(Id., Document No. 91, pp. 24 - 28.) Thus, the record reveals that the District Court did not vary upwards based upon the presentment of the State trial transcripts when sentencing Movant. The District Court specifically stated that although such was considered, the District Court did "not give it preponderant weight that the Government asks me to give it." (Criminal Action No. 2:16-00116, Document No. 91, p. 28.) Based upon the foregoing, the undersigned finds that Movant cannot establish that defense counsel was deficient or that he was prejudiced by the alleged deficiency. Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

### F.    Counsels' failure to argue mitigating Section 3553 sentencing factors:

In Ground Six, Movant argues that "[c]ounsel did not orally argue any pertinent § 3553 sentencing factors in mitigation of this [Movant's] sentence." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.) Movant states that defense counsel "did not offer any oral argument at sentencing upon question of the Court as to whether there were any § 3553 factors the Court should have taken into consideration prior to the imposition of sentencing." (Id.) Movant complains that "[c]ounsel did not respond to the question of the Court in a manner that would have been consistent with what counsel and your Movant had consulted upon." (Id.)

In his Affidavit in Response, Mr. Capece states that he was fully prepared to argue pertinent Section 3553(a) factors at the Sentencing Hearing. (Civil Action No. 2:18-00605, Document No.

33

115, p. 9.) Mr. Capece further attaches a copy of his Sentencing Argument Outline, which was prepared to assist him with his arguments. (Id. and Document No. 115-5.) Mr. Capece, however, explains that "[w]hen the Court asked undersigned counsel whether he had anything additional to offer with regard to any § 3553(a) factors other than what had been already briefed, undersigned counsel responded truthfully that he did not." (Id., Document No. 115, p. 9.) Mr. Capece, however, acknowledges that he did "expect the Court would ask whether the parties wanted to argue why the § 3553(a) factors cited in their briefs supported the sentence requested." (Id.) Mr. Capece states that he was "surprised that the Court did not specifically ask the parties if they had anything to say prior to the Court announcing the Movant's sentence" because "undersigned counsel had nearly ten years' experience practicing criminal law in this district and does not recall a single instance when the Court did not request whether the parties wanted to offer argument in support for a specific sentence prior to the Court announcing the defendant's sentence." (Id.) Mr. Capece explains that "[a]fter the Court announced Movant's sentence, undersigned counsel listened to the reasons why the Court sentenced Movant to 70 months in prison." (Id., p. 10.) Mr. Capece states that the Court referred to several of the arguments made by counsel in Movant's Sentencing Memorandum, but the Court determined such were unpersuasive for the imposition of a light sentence. (Id.) Mr. Capece explains that when the Court inquired as to whether there were "any reasons why the sentence should not now be imposed," Mr. Capece requested a moment to speak with Movant. (Id.) Mr. Capece states that "[i]t was as this time that the Court stated, incorrectly, that he had previously asked Movant if there was anything he wanted to say and Movant had not responded." (Id.) Mr. Capece explains that he then requested a moment to confer with Movant and co-counsel, and such was allowed by the Court. (Id.) Mr. Capece contends that "[w]e agreed that Movant should address the Court with his prepared statement." (Id.) Mr. Capece notes that he had

34

reviewed the statement prior to the sentencing hearing and believed it was "strong enough that it had the potential to persuade the Court to lower Movant's 70-month sentence." (Id.) Mr. Capece explains that he was "cognizant of the Court's earlier statement that it had considered and yet rejected undersigned counsel's arguments related to § 3553(a) factors set forth in Movant's sentencing memorandum, decided at that moment that the best chance for the Court to revise Movant's sentence lay in the Court's consideration of Movant's allocation." (Id., pp. 10 – 11.)

In Response, the Respondent argues that "[e]ven if defense counsel did not orally argue regarding the § 3553(a) factors at the hearing, defense counsel addressed all of these factors extensively when arguing for mitigation in the approximately fifty pages of sentencing memorandum submitted by the defense." (Id., Document No. 116, pp. 16 - 17.) Respondent also notes that the District Court inquired as follows: "Does either party have anything additional to offer with regard to any of the 3553(a) factors?." (Id., p. 17.) Respondent notes that both parties responded that they did not have anything to offer beyond what had been previously submitted in their sentencing memorandums. (Id.) Respondent argues that defense counsel did not render ineffective assistance of counsel merely because he "did not rehash at the hearing the points that had previously been submitted to the district court in writing." (Id.) As set forth in Mr. Capece's Affidavit, Respondent notes that the District Court "specifically referred to several mitigating factors argued by defense counsel in the defendant's sentencing memoranda." (Id.)

In Reply, Movant argues that the District Court "never limited Mr. Capece to "other than what had been already briefed." (Id., Document No. 117, p. 13.) Movant contends that Mr. Capece "abandoned his representation in defense of Movant." (Id.) Movant states that during the brief consultation, "Mr. Capece advised your movant that the tribunal had already made his decision and nothing we said was going to change that because the tribunal was readying a 'script.'" (Id.)

Movant acknowledges that "counsel explained that this movant could speak, which I chose to do." (Id.)

The record reveals that Mr. Capece extensively addressed all Section 3553(a) sentencing factors in Movant's Sentencing Memorandum, and Movant's Reply to the Government's sentencing memorandum. (Criminal Action No. 2:16-00116, Document Nos. 73, 74, 84.) Mr. Capece states in his Affidavit that he had no additional arguments to offer besides the arguments set forth in his briefs. Mr. Capece attaches a copy of his Sentencing Argument Outline, which collaborates his above statement. (Id. and Document No. 115-5.) During the Sentencing Hearing, the District Court inquired as follows:

| | |
|---|---|
| THE COURT: | Section 3553(a) of Title 18 of the United States Code provides several factors that the Court must consider when determining the appropriate sentence for Mr. Quinones. The parties are familiar and have briefed the 3553(a) factors. |
| | Does either party have anything additional to offer with regard to any of the 3553(a) factors? |
| MS. HERRALD: | Nothing in addition to what has already been briefed by the United States. |
| MR. CAPECE. | The same, Your Honor. |

(Criminal Action No. 2:16-00116, Document No. 91, pp. 21 - 22.) Movant complains that Mr. Capece improperly followed the "lead of the Government" in limiting the Court's inquiry to arguments not included in prior briefing. (Id., Document No. 117.) The undersigned, however, finds that Mr. Capece did not act unreasonably in believing the District Court was inquiring as to whether the parties wished to present additional arguments not included in briefing. Prior to inquiring from the parties, the District Court stated that "parties are familiar and have briefed the 3553(a) factors." Document No. 91, p. 21.) Immediately after making this statement, the District Court inquired "Does either party have anything *additional* to offer with regard to any of the

36

3553(a) factors." (Id.)(emphasis added). Even assuming Mr. Capece acting unreasonably in making an incorrect assumption, the record is void of any indication that Movant was prejudiced by Mr. Capece's conduct. Neither Movant nor Mr. Capece indicate that Movant wished to assert an additional argument not addressed in briefing. As stated above, Mr. Capece had filed briefs extensively addressing all Section 3553(a) factors. There is no indication that Movant would have received a shorter sentence if Mr. Capece would have repeated the same arguments orally during the Sentencing Hearing. Additionally, a review of record clearly reveals that the District Court was very familiar with Mr. Capece's arguments concerning the Section 3553(a) factors. (Id., Document No. 115, pp. 22 - 30.) The mere fact that the District Court did not find such arguments persuasive does not render counsel's performance ineffective. The undersigned, therefore, recommends that the District Judge find that Movant cannot demonstrate that defense counsel's above conduct fell below an objective standard of reasonableness or that Movant's was prejudiced by counsel's failure. Based upon the foregoing, the undersigned respectfully recommends that Movant's above ineffective assistance of counsel claim be denied.

### G.    Counsels' failure to object to detention and the announcement of sentencing prior to Movant's allocution:

In Ground Seven, Movant argues that "[c]ounsel failed to object to Magistrate Eifert's findings and order for detention and probable cause to be used by Judge Goodwin after he asked if there was any objection to its use." (Civil Action No. 2:18-00605, Document Nos. 108 and 109.) Movant further complains that "[c]ounsel failed to object to the Court's notifying parties of the Court's sentence prior to [Movant]'s allocution. (Id.)

In his Affidavit in Response, Mr. Capece states that he "did not object at the conclusion of Movant's plea hearing to the Court's consideration of Magistrate Judge Eifert's findings of probable cause and detention order for the limited purpose of determining whether Movant posed

37

a risk of flight and posed a danger to any other person in the community." (Civil Action No. 2:18-00605, Document No. 115, p. 11.) Mr. Capece explains that he was "confident that the Court would not release Movant on bond." (Id.) Mr. Capece states that he anticipated that such objections to Judge Eifert's findings and order would have resulted in the Government arguing "facts related to Movant's prior escape and allegations that Movant was involved in drug trafficking in 2010, right before he absconded from parole." (Id.) Mr. Capece contends that "did not wish the Court to hear Government counsel argue facts that would have painted an unfavorable picture of Movant prior to the probation officer's PSR preparation when it would be appropriate to file non-frivolous objections." (Id.) Concerning Movant's allocution claim, Mr. Capece states that he was "surprised when, after stating that undersigned counsel had no further § 3553(a) factors to present, the Court immediately announced Movant's sentence without giving him the opportunity to offer an allocution." (Id., pp. 9 – 10.) Mr. Capece explains that "[a]fter the Court announced Movant's sentence, undersigned counsel listened to the reasons why the Court sentenced Movant to 70 months in prison." (Id., p. 10.) Mr. Capece explains that when the Court inquired as to whether there were "any reasons why the sentence should not now be imposed," Mr. Capece requested a moment to speak with Movant. (Id.) Mr. Capece states that "[i]t was as this time that the Court stated, incorrectly, that he had previously asked Movant if there was anything he wanted to say and Movant had not responded." (Id.) Mr. Capece explains that he then requested a moment to confer with Movant and co-counsel, and such was allowed by the Court. (Id.) Mr. Capece contends that "[w]e agreed that Movant should address the Court with his prepared statement." (Id.) Mr. Capece notes that he had reviewed the statement prior to the sentencing hearing and believed it was "strong enough that it had the potential to persuade the Court to lower Movant's 70-month sentence." (Id.) Mr. Capece notes that Movant was allowed to present his statement to the Court.

(<u>Id.</u>, p. 11.) Mr. Capece noted that even though the Court responded favorably to Movant's allocation, the Court did not revise the previously announced sentence." (<u>Id.</u>)

In Response, the Respondent argues that neither Mr. Capece's failure to object to the use of Judge Eifert's conclusions on detention for determining whether Movant should be released on bond following his Plea Hearing, nor Mr. Capece's failure to object to the District Court's announcement of sentencing prior to Movant's allocution resulted in ineffective assistance of counsel. (<u>Id.</u>, Document No. 116, p. 18.) Concerning Mr. Capece's failure to object to Judge Eifert's conclusion on detention, Respondent argues that Movant "simply cannot prove that but for defense counsel's failure to re-argue the issue of detention at the conclusion of the plea hearing he would have insisted on going to trial." (<u>Id.</u>) Respondent notes that Movant was already detained prior to his Plea Hearing, and Movant "makes no claim that the reason he chose to plead guilty was the possibility of being released on bond pending sentencing." (<u>Id.</u>) As set forth in Mr. Capece's Affidavit, Respondent further notes that Mr. Capece "made a strategic decision to allow the district court to rely upon the magistrate court's findings regarding detention rather than give the United States the opportunity to bring unfavorable information to the district court's attention." (<u>Id.</u>)

Concerning Movant's claim that counsel was ineffective in his failure to object to the District Court's announcement of sentencing prior to Movant's allocution, Respondent notes that the Fourth Circuit considered and rejected this issue on appeal. (<u>Id.</u>, p. 18.) Specifically, Respondent states that the Fourth Circuit held that "'[i]t is clear from the record that no prejudice resulted' from defense counsel's failure to object immediately upon the district court's announcement of defendant's sentence prior to allocution by defendant." (<u>Id.</u>, pp. 18 – 19.) Furthermore, Respondent notes that Rule 32(i)(4)(A)(ii) "does not require that this allocution take

place at any particular point during the sentencing hearing." (<u>Id.</u>, p. 19.) Respondent asserts that "the record makes clear, defendant was given the opportunity to extensively address the district court prior to the final imposition of sentence." (<u>Id.</u>) Respondent further notes that "the district court explicitly stated it would take into account defendant's statements, and indeed the district court commented on defendant's impressive 'intelligence and insight.'" (<u>Id.</u>, p. 20.) Therefore, Respondent argues that Movant cannot demonstrate that Mr. Capece's performance was deficient "simply because defense counsel failed to object to non-erroneous conduct by the district court where no prejudice ultimately resulted." (<u>Id.</u>)

In Reply, Movant argues that Mr. Capece's "failure to object to both use of Magistrate Eifert's conclusions and the notification of the sentence prior to allocution shows a clear pattern of intentional ineffectiveness." (<u>Id.</u>, Document No. 117, pp. 13 - 14.) Movant argues that Mr. Capece's claim that he did not want to bring unfavorable information to the District Court's attention at the Plea Hearing is satirical because the United States subsequently "filed a 33 page sentencing memoranda, State murder trial transcripts, and PSR objections there were an unconscionable overkill of assassination of character." (<u>Id.</u>, p. 14.) Movant concludes that Mr. Capece "abandoned his representation prior to effectively arguing, vigorously, and orally." (<u>Id.</u>)

First, the undersigned finds that Mr. Capece's failure to object to the use of Judge Eifert's conclusions on detention for the District Court's determination as to whether Movant should be released on bond following his Plea Hearing did not constitute deficient performance. In his Affidavit, Mr. Capece explains that he was "confident that the Court would not release Movant on bond" and he "did not wish the Court to hear Government counsel argue facts that would have painted an unfavorable picture of Movant prior to the probation officer's PSR preparation when it would be appropriate to file non-frivolous objections." (Civil Action No. 2:18-00605, Document

No. 155, p. 11.) Thus, the undersigned cannot find that counsel acted unreasonably in his failure to object. Next, the record is void of any indication that Movant would have been released on bond, and the results of the proceeding would have been different, but for counsel's failure to object.

Second, the undersigned finds that Mr. Capece's failure to object to the District Court's announcement of sentencing prior to Movant's allocution, did not constitute ineffective assistance of counsel. Movant asserted the exact same claim in his direct appeal. See Quinones, 707 Fed.Appx. at 186. The Fourth Circuit determined that "[i]t is clear from the record that no prejudice resulted" from defense counsels' failure to object to the District Court's initial statement of reasons supporting its intended sentence prior to providing Movant the opportunity to allocate. Id. As determined by the Fourth Circuit, "[t]he court gave Quinones the opportunity to allocate, considered Quinones's statement, discussed the impact of his statement, further discussed its reasoning, and then pronounced the final sentence." Id.; (Criminal Action No. 2:16-00116, Document No. 91, pp. 30 – 37.); Also see Boeckenhaupt, 537 F.2d at 1183(a movant may not reassert a claim decided on direct review). Thus, the record reveals that the District Court properly allowed Movant to allocate prior to imposing Movant's sentence. See Fed. R. Crim. P. 32(i)(4)(A)(ii); (Criminal Action No. 2:16-00116, Document No. 91, p. 30)("THE COURT: I will not penalize you for that. And if I hear something from either you or the defendant now that would change by preliminary conclusions as stated, I will not hesitate to do that. So I'll listen."); also see United States v. Engle, 676 F.3d 405, 425 (4th Cir. 2012)(finding no plain error "[w]hen a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statements before imposing a final sentence."). Thus, the undersigned finds that Movant was not prejudiced by defense counsel's failure to objection to the District Court's initial statement of reasons supporting its intended

sentence prior to providing Movant the opportunity to allocute. Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

2.    **Appellate Waiver and Vindictive and Selective Prosecution:**

In his Motion, Movant challenges the validity of his appellate waiver and asserts he was subjected to vindictive and selection prosecution. (Civil Action. 2:18-00605, Document Nos. 108 and 109.) In Response, Respondent argues that Movant's appellate waiver is valid and enforceable. (Id., Document No. 116, pp. 20 – 24.) Next, Respondent contends that Movant's claim of vindictive and selective prosecution is precluded by the appellate waiver. (Id., pp. 24 – 25.) In Reply, Movant continues to argue that his appellate waiver should be deemed unconstitutional. (Id., Document No. 117, pp. 15 – 17.) Movant contends that the United States "developed its diabolical plan to retry your movant and have him primarily punished for an acquitted murder and dismissed/uncharged conduct under the guise of a non-violent incident free constructive possession of a firearm by a prohibited person is mind lowing to say the least." (Id.)

In his written plea agreement, Movant agreed to waive his rights to appeal his conviction and sentence directly and challenge them under Section 2255 except on grounds of ineffective assistance of counsel. (Criminal No. 2:16-00116, Document No. 55, pp. 4 - 5.) It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "To determine whether a waiver is knowing and intelligent, this court examines 'the totality of the circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement.'" United States v. Johnson, 480 Fed.Appx. 229, 230 (4th Cir. 2012)(citation omitted). Generally the waiver is valid and enforceable

if a Court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy. Id.

On appeal, the Fourth Circuit specifically considered whether Movant's appeal waiver was valid and enforceable. Quinones, 707 Fed.Appx. at 185-86. It is well established that a movant may not reassert a claim decided on direct review. In Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." An exception exists, however, when there has been an intervening change in the law which justifies consideration of a prior determination. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974). In the instant case, the United States moved to dismiss Movant's appeal as barred by the appeal waiver contained in Movant's Plea Agreement. Quinones, 707 Fed.Appx. at 185-86. The Fourth Circuit first considered and determined that Movant "entered into his plea knowingly and voluntarily." Id. at 185. Specifically, the Fourth Circuit stated as follows:

> In this case, the district court reviewed the plea agreement with Quinones, and Quinones stated, under oath, that he understood the agreement and agreed to its provisions. The district court also reviewed the rights Quinones gave up by pleading guilty and the consequences of this guilty plea. Quinones stated that the Government's factual basis supporting the plea was correct, that he pled guilty because he was actually guilty, and that he did so without threats or coercions. We therefore conclude, based on the totality of the circumstances, that Quinones's plea was knowing and voluntary.

Id. The Fourth Circuit then considered and determined that Movant's appeal waiver was valid. Id. The Fourth Circuit explained as follows:

> Upon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Quinones knowingly and voluntarily waived his right to appeal, and the issue of whether the district court judge gave a timely opportunity for allocution under Fed. R. Crim. P. 32(i)(4)(A)(ii) falls within the scope of Quinones's waiver of appellate rights.

43

Id. at 185-86. Movant now attempts to recast, under the guise of collateral attack, an issue considered and previously rejected by the Fourth Circuit. Therefore, Movant's above claim challenge to the validity of his appellate wavier is procedurally barred because Movant is seeking to revisit the same issue that was addressed on direct appeal without directing the Court to any intervening change in law which authorizes him to do so. See Boeckenhaupt, supra, 537 F.2d at 1183. Based on the foregoing, the undersigned further finds that Movant's appellate waiver is valid as it was entered into knowingly, intelligently, and voluntarily. Thus, Movant waived his right to challenge the validity of his conviction and sentence. Accordingly, Movant claim of selective and vindictive prosecution is barred by his valid appellate waiver and should be dismissed. The undersigned, therefore, respectfully recommends that Movant above *habeas* claims be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 108) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing

of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: January 9, 2020.

Omar J. Aboulhosn
United States Magistrate Judge